IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 16, 2004

## CHARLES EDWARD OVERBY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Bradley County**
**No. 01-225    Carroll L. Ross, Judge**

_____

**No. E2004-00962-CCA-R3-PC - Filed February 24, 2005**

_____

The petitioner, Charles Edward Overby, was convicted by a jury in the Bradley County Criminal Court of second degree murder, theft over $1,000, theft under $500, aggravated assault, and possession of marijuana. He received a total effective sentence of thirty-five years incarceration in the Tennessee Department of Correction. Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective. The post-conviction court dismissed the petition, finding that counsel was not ineffective. On appeal, the petitioner challenges this ruling and additionally contends that he should have been evaluated for competency prior to the commencement of the post-conviction hearing. Upon our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

A. Wayne Carter, Cleveland, Tennessee, for the appellant, Charles Edward Overby.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Sandra Donaghy, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

### I. Factual Background

The proof at the petitioner's trial was summarized by the post-conviction court as follows:

On June 3, 1997, the [petitioner] stole a state vehicle in Georgia from the residence of Sergeant Thomas Keith Swinford of the Georgia Department of Natural Resources. [The petitioner] was

seen by Swinford's son and later identified by him as the person who stole the vehicle. There were several firearms in Sergeant Swinford's vehicle when it was stolen.

[The petitioner] then drove the Georgia state vehicle to Bradley County, Tennessee, where he was observed by several people who testified at trial to his bizarre behavior.

At one point, he stopped at the home of Roy Grant Breedlove, a juvenile, and offered him some marijuana. Breedlove testified that [the petitioner] appeared to be "tired or strung out" from the look in his eyes.

Jamie Fowler was visiting with his friend, Roy Allen Hampton, in Bradley County, Tennessee, on the date of the theft. They had gone to school together, worked together at a carpet mill for several years, and were working on Fowler's vehicle at the Hampton residence when [the petitioner] pulled into the drive way.

[The petitioner] pointed a handgun at the two men and asked, "Where's my kids at?" Hampton told [the petitioner] that the residence was his and that there were no kids there. [The petitioner] insisted that his kids were there, and, after further exchange of words, he pointed the gun at Hampton and shot him.

Fowler escaped around the corner of the house, went inside, and called 911. Hampton later died as a result of the wounds inflicted by the gunshot. At the trial in this cause, Fowler identified [the petitioner] as the person who shot his friend.

Several friends and family members testified to the behavior of [the petitioner] throughout his life, and there was testimony that he had suffered a head injury in an automobile accident when he was young. There was also testimony that, at the time of the crime, [the petitioner] had been taking large amounts of amphetamines.

A [p]sychiatrist also testified that [the petitioner] was suffering from major depression with psychosis and mixed substance abuse. Other medical personnel testified as to the mental condition of [the petitioner].

Part of [the petitioner's] defense a[t] trial was that he was suffering from insanity at the time of the crimes. The jury heard that

testimony in the case, including [the petitioner's] defense of insanity,
and convicted him of [the foregoing] offenses.

Following the petitioner's convictions, the trial court imposed a total effective sentence of thirty-five years. On direct appeal, this court affirmed the judgments of the trial court. See State v. Charles Edward Overby, No. E1999-00253-CCA-R3-CD, 2000 WL 246225, at *1 (Tenn. Crim. App. at Knoxville, Mar. 6, 2000).

Subsequently, the petitioner, acting pro se, filed a petition for post-conviction relief, alleging several instances of ineffective assistance of counsel, including counsel's ineffectiveness in pursuing a defense of insanity when the evidence did not support such a defense and in failing to interview the mental health experts prior to trial. The post-conviction court appointed counsel to assist the petitioner. Counsel did not file an amended petition for post-conviction relief, choosing instead to proceed on the basis of the petitioner's original pro se petition.

On July 3, 2002, the day scheduled for a hearing on the petitioner's post-conviction petition, post-conviction counsel raised an issue of the petitioner's competency. Specifically, counsel stated that prior to the petitioner's trial, the petitioner had been found incompetent to stand trial; however, following treatment the petitioner was found to be competent and was convicted by a jury. Counsel moved for an evaluation of the petitioner's competency to assist in the post-conviction proceedings, stating:

> Since I've been involved in this [post-conviction] case, which is I guess maybe a little over a year now, I've had two telephonic conversations with [the petitioner], and then we met last night at the jail here in Bradley County. And I have to advise the Court, I'm a little concerned about his ability to assist me in preparing for this hearing. When we talked, there's just a number of issues that he doesn't remember or doesn't know about, things that he should know about in discussing the case.
>
> . . . .
>
> It's a difference – I interviewed him over the phone a couple of times, and there's a difference how I can perceive things – when I see them face to face than when I do it on the phone.

The post-conviction court remarked that "counsel obviously after seeing [the petitioner] since he got here is very concerned about his abilities. So based on his prior problems, I'm inclined to grant his motion [for an evaluation], because I think just in an abundance of caution, we need all of that squared away before we actually proceed." The trial court entered an order authorizing a competency evaluation of the petitioner.

The petitioner's case was set for a hearing on ten separate occasions between July 3, 2002, and January 9, 2004. The record reflects that on each occasion, the parties discussed efforts to obtain an evaluation for the petitioner.[1] All attempts were thwarted because the mental health authorities claimed that they were not authorized by statute to perform post-conviction competency evaluations. Ultimately, the post-conviction court overruled the petitioner's motion for mental evaluation, noting that

> the state mental health authorities filed a petition to vacate the order [for evaluation of the petitioner] under Rule 13. . . .[2] Therefore, based on Rule 13, which specifically excludes payment for post-conviction experts in non-capital cases, and after consultation with the Public Defender's Conference, Attorney General's Conference, and Administrative Office of the Courts, this Court finds that said evaluation is not authorized by statute.

Subsequently, an evidentiary hearing was held on the merits of the petitioner's pro se petition for post-conviction relief. At the hearing, the petitioner testified, "I feel pretty good today. . . . I take my medicine regular, and it's just got me cleared up." He stated that he was in better mental health at the post-conviction hearing than he had been at trial because he was seeing doctors regularly. The petitioner maintained that he understood the post-conviction proceedings and knew that he was in court "[t]o have a post-conviction to see if it's, it, any part of the trial didn't go right the last time or it wasn't tried right. If it's not tried right, I get another trial."

The petitioner asserted that he could not remember the proof that was adduced at trial, nor could he understand the trial proceedings as they happened. As one of his issues, the petitioner complained that the determination that he was competent to stand trial was made five months before trial began; however, he was not reevaluated for competency immediately prior to trial. The petitioner testified that he could not remember his trial testimony or the testimony of other witnesses. Additionally, the petitioner maintained that his trial counsel was ineffective by pursuing a defense of insanity when all the mental health experts involved agreed that a defense of insanity could not be supported. Finally, the petitioner maintained that he would not have pled guilty to second degree murder, but he would have pled guilty to a lesser offense.

The petitioner's trial counsel testified that from the beginning of his representation of the petitioner, the petitioner would say "spontaneous nonsensical things, and he admitted he was on drugs at the time [of the offenses]." Because the killing was "nonsensical," counsel automatically considered pursuing an insanity defense. Moreover, counsel asserted that no other defense would have been successful because of the strength of the State's proof.

---

[1] We commend the post-conviction court, post-conviction counsel, and the State on their tremendous and dedicated efforts to obtain an evaluation for the petitioner.

[2] The petition filed by the state mental health authorities was not included in the record for our review.

Trial counsel testified that initially he believed the petitioner was competent to stand trial. However, the petitioner's family advised counsel of the petitioner's "bizarre" and "threatening" behavior; therefore, counsel petitioned the court to have him evaluated for competency and insanity. Trial counsel recalled that "the initial determination that he was not competent to stand trial was based upon not necessarily . . . anything other than depression. . . . [H]e was too, too depressed to function properly." Ultimately, the petitioner was rendered competent to stand trial.

Counsel recalled that the mental health experts who evaluated the petitioner had concluded that he suffered from paranoid schizophrenia. Trial counsel asserted that "their records were a lot stronger in his behalf than their testimony in court." He asserted that the experts "backpedaled" and "downplayed" the petitioner's diagnosis during their trial testimony, attributing the petitioner's behavior to "drug induced psychosis."

Regarding his preparation of the expert witnesses, trial counsel maintained that "we had a problem getting them here at the appropriate time, and for most of them, I just had to shoot from the hip. But I, I did have all of their records, and all their, all the data. If the, if the data, the medical records had not supported our position, I would not have even subpoenaed them to start with." Counsel admitted that he did not interview the experts prior to trial. However, he asserted that he had "quite a time to talk" with the experts "during the pendency of the trial."

Trial counsel conceded that all of the experts testified that despite the petitioner's mental illness, an insanity defense could not be supported. Counsel maintained that he "didn't realize" that would be the position of all the experts. Counsel stated that if he had realized that the experts would opine that the insanity defense could not be supported,

> [t]hen there would have been no further proof, and if I had chosen not to call them, and then I don't think that would have been a good strategy. . . . Irrespective of what they might say about the ultimate issue in the case, every one of them had records, indisputable records that indicated problems with [the petitioner], that one could infer mental health problems. And we had no other way of introducing that other them through these mental health professionals. . . . [W]e couldn't have brought out not only their clinical conclusions otherwise, and we couldn't have brought out all this bizarre behavior and records that come in through the hearsay exceptions of the medical records. So there was every reason to proceed forward, no matter what they were going to say on the ultimate issue.

Additionally, counsel recalled that the only plea offered by the State was for the offense of second degree murder. Counsel did not believe that the State was willing to accept a plea on a lesser offense. Further, counsel stated that there was nothing to lose by going to trial because the petitioner's medical records raised "a viable defense" of insanity.

Based upon the foregoing proof, the post-conviction court denied the petition for relief, finding that "[t]here has been no showing in this case that the representation by counsel was not within the required 'range of competency' demanded by Strickland." On appeal, the petitioner contests both the post-conviction court's denial of a mental evaluation prior to the post-conviction hearing and the denial of post-conviction relief.

## II. Analysis

### A. Post-Conviction Competency Evaluation

First, we will address the petitioner's complaint regarding the post-conviction court's failure to order a competency evaluation prior to the post-conviction hearing. Initially, we note that the post-conviction court's denial of the request for a competency evaluation is reviewed for an abuse of discretion. See State v. Scott, 33 S.W.3d 746, 752 (Tenn. 2000). As we stated earlier, the post-conviction court overruled the petitioner's motion for a competency evaluation, finding "that said evaluation is not authorized by statute." On appeal, the petitioner has failed to provide any citation of authority to support his claim that an indigent, non-capital, post-conviction petitioner is entitled to a competency hearing to determine whether he is able to assist with the presentation of his post-conviction claims. Generally, such an omission constitutes a waiver of the contested issue. See Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 27(a)(7). Nevertheless, we will briefly address this issue.

In denying relief, the post-conviction court relied upon Rule 13 of the Rules of the Supreme Court. The court noted that Rule 13 does not authorize a court to order expert services for a non-capital post-conviction petitioner. Our review reveals that the post-conviction court's assessment of Rule 13 is correct. See John Paul Seals v. State, No. E2001-01756-CCA-R3-PC, 2002 WL 1482772, at *3 (Tenn. Crim. App. at Knoxville, July 11, 2002). However, this court has previously indicated that a competency hearing may be ordered by a court for a non-capital post-conviction petitioner under Rule 28 of the Rules of the Supreme Court. See Jesse C. Minor v. State, No. M2001-00545-CCA-R10-PC, 2001 WL 1545498, at *8 (Tenn. Crim. App. at Nashville, Dec. 5, 2001). Rule 28 provides that a court may "make[] . . . orders as are necessary to the efficient management of the case."

Regardless, even if the post-conviction court had the authority to order a competency evaluation, we conclude that in the instant case the petitioner has failed to show that a competency evaluation was needed. The petitioner testified at the post-conviction hearing that he "felt pretty good" and was taking medicine regularly to improve his mental health. The petitioner also maintained that he understood the post-conviction proceeding and was able to testify as to the issues. Moreover, we note that post-conviction counsel chose to proceed under the petitioner's pro se post-conviction petition, apparently finding no need to file an amended petition. Finally, we note that the only ineffective assistance issue the petitioner has chosen to pursue on appeal concerns trial counsel's decision to pursue an insanity defense. This issue did not require the petitioner's testimony. We conclude that the petitioner is not entitled to relief on this issue.

B. Ineffective Assistance of Counsel

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

The petitioner alleges on appeal that "it is unthinkable that trial counsel would pursue a defense and never interview the very witnesses intended to be used in support of the defense." As we have noted, in the instant case, trial counsel pursued a defense of insanity. Several experts testified that the petitioner suffered from a mental illness; however, the experts did not find that the petitioner could not appreciate the wrongfulness of his conduct as a result of his mental illness. Trial counsel testified that he did not interview the experts prior to trial, but he did review the petitioner's medical records. Further, counsel briefly spoke with the experts during trial. Trial counsel averred that his decision to present the testimony of the experts without interviewing them beforehand was based, in part, on trial strategy. Additionally, counsel maintained that he did not want to alert the experts to the questions he would ask during trial, fearing that the experts would plan answers which were more damaging to the petitioner. Counsel chose to rely primarily upon the petitioner's mental health records to support the petitioner's claims of mental illness. We will not now second-guess counsel's decision. See Johnson v. State, 145 S.W.3d 97, 120 (Tenn. Crim. App. 2004). Moreover, the proof of the petitioner's guilt at trial was overwhelming. Therefore, we can discern no appreciable prejudice suffered by the petitioner as a result of counsel's strategy. This issue is without merit.

## III.  Conclusion

Finding no reversible error, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE